IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KERIMARIE SUTHERLAND, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 3:23-CV-2665 |
| | § | |
| OTB ACQUISITION LLC, | § | |
| | § | |
| Defendant. | § | |

# BRIEF IN SUPPORT OF JOINT MOTION TO STAY <u>PROCEEDINGS AND COMPEL ARBITRATION</u>

Celeste R. Yeager
Michaela D. Noble
LITTLER MENDELSON, P.C.
2001 Ross Avenue, Suite 1500
Dallas, TX 75201
cyeager@littler.com
mnoble@littler.com
(214) 880-8100
(214) 880-0181 (Fax)

**ATTORNEYS FOR DEFENDANT**

Jonathan J. "Jack" Walters
WALTERS LAW OFFICE, PLLC
jack@walterslawofficepllc.com
3113 S. University Drive, # 400
Fort Worth, Texas 76109
(682) 747-6800
(682) 747-6899 (Fax)

**ATTORNEY FOR PLAINTIFF**

# TABLE OF CONTENTS

**PAGE**

I.   INTRODUCTION ................................................................................................ 1

II.  STATEMENT OF FACTS ................................................................................... 1

III. ARGUMENTS AND AUTHORITIES................................................................. 3

    A.  Arbitration agreements are strongly favored and are valid under federal and state law.................................................................................................. 3

    B.  The FAA governs the parties' Arbitration Agreement. ......................................... 3

    C.  The Court should compel arbitration because the Arbitration Agreement is enforceable, as a matter of law, under the FAA. ..................................................... 4

        1.  Plaintiff Entered Into a Valid and Enforceable Agreement to Arbitrate. ................................................................................................. 5

        2.  Plaintiff's claims clearly fall within the scope of the Arbitration Agreement.................................................................................................. 7

    D.  The present lawsuit must be stayed. ..................................................................... 9

IV.  CONCLUSION..................................................................................................... 10

CERTIFICATE OF SERVICE ................................. **ERROR! BOOKMARK NOT DEFINED.**

# TABLE OF AUTHORITIES

<div align="right">Page(s)</div>

**Cases**

*In re AdvancePCS Health, L.P.*,
 172 S.W.3d 603 (Tex. 2005)..................................................................................................4

*Allied-Bruce Terminix Cos., Inc. v. Dobson*,
 513 U.S. 265 (1995)................................................................................................................4

*Angelou v. African Overseas Union*,
 33 S.W.3d 269 (Tex. App.—Houston [14th Dist.] 2000, no pet.)............................................5

*Anglin v. Tipps*,
 842 S.W.2d 266 (Tex. 1992)....................................................................................................8

*ATT Tech., Inc. v. Communication Workers of Am.*,
 475 U.S. 643 (1986)................................................................................................................8

*Cantella & Co. v. Goodwin*,
 924 S.W.2d 943 (Tex. 1996)................................................................................................3, 8

*Circuit City Stores v. Adams*,
 532 U.S. 105 (2001)................................................................................................................4

*Crossmark, Inc. v. Hazar*,
 124 S.W.3d 422 (Tex. App. – Dallas 2001, pet. denied)........................................................8

*Domingo v. Mitchell*,
 257 S.W.3d 34 (Tex. App.—Amarillo 2008, pet. denied)......................................................5

*EZ Pawn Corp. v. Mancias*,
 934 S.W.2d 87 (Tex. 1996).....................................................................................................4

*First Options of Chicago, Inc. v. Kaplan*,
 514 U.S. 938 (1995)................................................................................................................5

*In re FirstMerit Bank, N.A.*,
 52 S.W.3d 749 (Tex. 2001).....................................................................................................5

*Forest Oil Corp. v. McAllen*,
 268 S.W.3d 51 (Tex. 2008).....................................................................................................9

*Gilmer v. Interstate/Johnson Lane Corp.*,
 500 U.S. 20 (1991)..................................................................................................................3

## TABLE OF AUTHORITIES
(CONTINUED)

**P**AGE(S)

*Gray v. Sage Telecom, Inc.*,
  410 F. Supp. 2d 507 (N.D. Tex. 2006) ..................................................................................5

*Guitierrez v. Acad. Corp.*,
  967 F. Supp. 945 (S.D. Tex. 1997) ........................................................................................9

*Halliburton Energy Srvcs., Inc. v. Ironshore Specialty Ins. Co.*,
  921 F.3d 522 (5th Cir. 2019) ..................................................................................................5

*Howsam v. Dean Witter Reynolds*,
  537 U.S. 79 (2002) ..................................................................................................................5

*In re J.D. Edwards World Solutions Co.*,
  87 S.W.3d 546 (Tex. 2002) ....................................................................................................8

*Kirby Highlands Lakes Surgery Ctr., L.L.P. v. Kirby*,
  183 S.W.3d 891 (Tex. App.—Austin 2006, no pet.) ..........................................................3

*Lizalde v. Vista Quality Mkts.*,
  746 F.3d 222 (5th Cir. Tex. 2014) ........................................................................................6

*Merrill Lynch, Pierce, Fenner, & Smith, Inc. v. Longoria*,
  783 S.W.2d 229 (Tex. App.—Corpus Christi 1989, no writ) ............................................8

*Morrison v. Amway Corp.*,
  49 F. Supp. 2d 529 (S.D. Tex. 1998) ....................................................................................9

*In re Palm Harbor Homes, Inc.*,
  195 S.W.3d 672 (Tex. 2006) ..................................................................................................6

*Perry v. Thomas*,
  482 U.S. 483 (1987) ................................................................................................................4

*Prudential Sec., Inc. v. Marshall*,
  909 S.W.2d 896 (Tex. 1995) .............................................................................................3, 8

*Rent-A-Center, W., Inc. v. Jackson*,
  561 U.S. 63 (2010) ..................................................................................................................7

*Thick v. Dolgencorp of Tex., Inc.*,
  2017 U.S. Dist. LEXIS 4258 (E.D. Tex. Jan. 11, 2017) ....................................................6

*Tittle v. Enron Corp.*,
  463 F.3d 410 (5th Cir. 2006) ................................................................................................9

**TABLE OF AUTHORITIES**
(CONTINUED)

**PAGE(S)**

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
363 U.S. 574 (1960)....................8

*Volt Info. Sci., Inc. v. Bd. of Trs. of the Leland Stanford Junior Univ.*,
489 U.S. 468 (1989)....................5

*In re Weekley Homes, L.P.*,
180 S.W.3d 127 (Tex. 2005)....................5

*Williamson v. Bank of N.Y. Mellon*,
947 F. Supp. 2d 704 (N.D. Tex. 2013)....................6

**Statutes**

9 U.S.C. § 1, et seq....................1

9 U.S.C. § 3....................9

TEX. BUS. & COM. CODE § 322.007(d)....................6

TEX. CIV. PRAC. REM. CODE § 171.021....................4, 8

**Other Authorities**

TEX. R. CIV P. 6(a)....................7

Defendant OTB Acquisition LLC ("OTB") and Plaintiff Kerimarie Sutherland ("Plaintiff") move the Court for an Order compelling arbitration of Plaintiff Kerimarie Sutherland's ("Plaintiff") claims, and staying the action pending resolution of the arbitration in accordance with the arbitration agreement between the parties, and respectfully shows the Court the following:

## I.   INTRODUCTION

Plaintiff was most recently employed with OTB as a Server and Bartender until on or around January 9, 2023.  On December 4, 2023, Plaintiff filed the present lawsuit against OTB alleging claims for sex (pregnancy) discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), and Family and Medical Leave Act ("FMLA"). Plaintiff entered into a valid and binding arbitration agreement with OTB that required all disputes arising out of her employment with OTB to be resolved through mutually binding arbitration. Pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, et seq. ("FAA"), the Court should, therefore, compel arbitration and stay this action pending resolution of the arbitration.

## II.   STATEMENT OF FACTS

On October 30, 2021, Plaintiff and OTB entered into an Agreement to Arbitrate, filed herewith as Exhibit 1; APP. 001-003.

The Agreement to Arbitrate contained the following arbitration provisions:

> …if you are unable to resolve any…complaints or disputes [relating to your employment] to your satisfaction internally, the resolution of all disputes that arise between you and OTB, including any claims OTB may have against you, will be through formal, mandatory arbitration before a neutral arbitrator.

> …any legal or equitable claims or disputes arising out of or in connection with employment, terms and conditions of employment, or the termination of employment with OTB will be resolved by binding arbitration instead of in a court of law or equity. This agreement applies to all disputes now in existence or that may exist in the future that I may have against OTB, its affiliates, and/or their current or former employees, or that OTB and/or its affiliates may have against me.

> This policy substitutes one legitimate dispute resolution form (arbitration) for another (litigation), thereby waiving any right of either party to have the dispute resolved in court.
>
> A written notice of intention to arbitrate must be submitted in writing within the applicable statute of limitations. The notice shall contain: (1) the name, address and telephone number for all parties; (2) the name, address and telephone numbers of all counsel; (3) a brief statement of the nature of the dispute, including all claims raised; (4) the amount of controversy and (5) the remedy sought. If you are the one filing the claim, the notice shall be sent to: Human Resources, On The Border, 2201 West Royal Lane, Suite 220, Irving, Texas 75063. If OTB is the one filing the claim, the notice shall be sent to the address you have provided to OTB.
>
> The Respondent shall answer in writing within thirty (30) business days of the receipt of the notice to arbitrate.
>
> Within ten (10) business days thereafter, both parties shall submit to the other a list of three (3) qualified arbitrators. An arbitrator must be qualified in employment laws and any other areas of law referenced in this notice.
>
> An arbitrator shall be selected within (30) business days thereafter. If the parties cannot agree, they shall submit any pleadings (notice, answer, etc.) and a list of arbitrators to the American Arbitration Association (AAA) to select a qualified arbitrator. AAA may select an individual not on either party's list.

("Arbitration Agreement"). Plaintiff electronically signed the Arbitration Agreement on October 30, 2021. (Ex. 1; APP. 001-003).

Despite Plaintiff's express agreement to arbitrate all disputes arising out of her employment with OTB, Plaintiff filed the present lawsuit alleging sex (pregnancy) discrimination and retaliation and FMLA violations. *See* Plfs' Complaint, at ¶¶ 1-26. Specifically, Plaintiff alleges that OTB wrongfully terminated her due to sex (pregnancy), that OTB created a hostile work environment for her due to her sex (pregnancy), and that OTB intentionally interfered with her FMLA rights by refusing to restore Plaintiff to the position she held before she took leave. *Id.* at ¶¶ 20-21, 26.

The Court should compel arbitration because Plaintiff entered into a valid and binding

arbitration agreement with OTB that covers the disputes at issue in this case.

### III.     ARGUMENTS AND AUTHORITIES

Plaintiff should be compelled to arbitrate her claims against OTB. The strong federal policy favoring arbitration requires this Court to enforce the Arbitration Agreement and compel Plaintiff to arbitrate her claims. The United States Supreme Court has repeatedly adopted a broad reading of the FAA in enforcing arbitration agreements. The Arbitration Agreement between the parties in this case meets the criteria for a valid arbitration agreement and Plaintiff's claims are directly within its scope.

**A.     Arbitration agreements are strongly favored and are valid under federal and state law.**

Federal and state laws strongly favor arbitration, especially when both parties opt for that method of dispute resolution. *See Cantella & Co. v. Goodwin*, 924 S.W.2d 943, 944 (Tex. 1996). In fact, any written agreement to submit a dispute to arbitration should be liberally construed, and any doubt as to the arbitrability of an issue should be resolved in favor of arbitration. *Id.* at 944; *Prudential Sec., Inc. v. Marshall*, 909 S.W.2d 896, 899 (Tex. 1995); *Kirby Highlands Lakes Surgery Ctr., L.L.P. v. Kirby*, 183 S.W.3d 891, 896 (Tex. App.—Austin 2006, no pet.) ("It is well settled that '[a]rbitration is heavily favored under federal and state law and should not be denied unless it can be said with positive assurance that the arbitration clause cannot be interpreted so as to encompass the dispute in question.'").

**B.     The FAA governs the parties' Arbitration Agreement.**

Originally enacted in 1925 to reverse the "longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts," the FAA codifies a strong federal policy favoring arbitration. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20,

3

24 (1991); *see also Circuit City Stores v. Adams*, 532 U.S. 105, 122-23 (2001) (noting the significant benefits of arbitrating claims in the employment context.). Section 2 of the FAA states:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be **valid, irrevocable, and enforceable**, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (emphasis added).

The U.S. Supreme Court has interpreted the term "involving commerce" in the FAA as the functional equivalent of the more familiar term "affecting commerce" – words of art that ordinarily signal the broadest permissible exercise of Congress's Commerce Clause power. *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 277 (1995); *see also Perry v. Thomas*, 482 U.S. 483, 490 (1987) (the FAA "embodies Congress's intent to provide for the enforcement of arbitration agreements within the full reach of the Commerce Clause"). Thus, arbitration agreements between former employees and companies that engage in interstate activities[1] are subject to the FAA.

Because Plaintiff's employment relationship with OTB affects interstate commerce, the Arbitration Agreement involves "commerce" within the meaning of the FAA. Accordingly, the FAA governs the Agreement.[2]

C.  **The Court should compel arbitration because the Arbitration Agreement is enforceable, as a matter of law, under the FAA.**

A party seeking to compel arbitration under the FAA must establish that: (1) there is a valid agreement between the parties; and (2) the claims for which arbitration is sought fall within the

---

[1] OTB, a restaurant, engages in the interstate activities of serving food in various states and is subject to federal regulations.

[2] Texas law is consistent with the federal standard. An agreement to arbitrate in Texas is enforceable under the FAA if: (1) an agreement exists; and (2) the claims raised are within the scope of the agreement. *See In re AdvancePCS Health, L.P.*, 172 S.W.3d 603, 605 (Tex. 2005); *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 89 (Tex. 1996). If for any reason the FAA is inapplicable to Plaintiff's dispute, the arbitration is enforceable under Texas General Arbitration Act, which provides that "a written agreement to arbitrate is valid and enforceable." *See* Tex. Civ. Prac. & Rem. Code § 171.001, *et seq.*

4

scope of the arbitration agreement. *See In re Weekley Homes, L.P.*, 180 S.W.3d 127, 130 (Tex. 2005); *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 83-84 (2002); *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex. 2001). ("Once the movant establishes an agreement, the court must then determine whether the arbitration agreement covers the nonmovant's claims."). "If the court finds this two prong inquiry is satisfied, arbitration is mandatory." *Gray v. Sage Telecom, Inc.*, 410 F. Supp. 2d 507, 509-10 (N.D. Tex. 2006).

        1.     *Plaintiff Entered Into a Valid and Enforceable Agreement to Arbitrate.*

When deciding whether the parties agreed to arbitrate the dispute in question, courts generally should apply ordinary state-law principles that govern the formation of contracts. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Halliburton Energy Srvcs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 530 (5th Cir. 2019) ("Under the FAA, ordinary principles of state contract law determine whether there is a valid agreement to arbitrate."). "[I]n applying general state law principles of contract interpretation to the interpretation of an arbitration agreement within the scope of the [FAA], . . . due regard must be given to the federal policy favoring arbitration." *Volt Info. Sci., Inc. v. Bd. of Trs. of the Leland Stanford Junior Univ.*, 489 U.S. 468, 475-76 (1989) (internal citations omitted); *see also Staggs*, 2006 WL 740770, at *1. The party opposing arbitration bears the burden of establishing that the arbitration provision is invalid. *Garza*, 2014 WL 11332307, at *4 (citing *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004)).

In Texas, "[f]or a contract to exist, there must be an offer, acceptance, and consideration." *Domingo v. Mitchell*, 257 S.W.3d 34, 39 (Tex. App.—Amarillo 2008, pet. denied). When determining whether a party has in fact assented to the terms of an agreement, courts look to the communications between the parties and the acts and circumstances surrounding the communications. *Angelou v. African Overseas Union*, 33 S.W.3d 269, 278 (Tex. App.—Houston

5

[14th Dist.] 2000, no pet.). In this case, the parties agreement to arbitrate contained in the Arbitration Agreement is clearly valid and enforceable and supported by ample consideration for multiple reasons.

First, Plaintiff unequivocally accepted and acknowledged her consent to arbitrate any claims arising out of her employment with OTB, terms and conditions of employment, or termination of employment when she electronically signed the Arbitration Agreement with an effective date of October 30, 2021. (Ex. 1; APP. 001-003).[3] Accordingly, Plaintiff accepted the terms of the Arbitration Agreement and a valid and enforceable agreement to arbitrate was formed. *See Thick v. Dolgencorp of Tex., Inc.*, 2017 U.S. Dist. LEXIS 4258, 5-6 (E.D. Tex. Jan. 11, 2017) ("Texas has adopted the Uniform Electronic Transactions Act (Tex. Bus. & Com. Code §§ 322.001-322.021), which provides that electronic signatures may be used in contract formation.") (citing Tex. Bus. & Com. Code § 322.009(a)).

Second, the agreement to arbitrate is expressly mutual, *i.e.*, both Plaintiff and OTB are required to arbitrate disputes covered by the Arbitration Agreement. *See Lizalde v. Vista Quality Mkts.*, 746 F.3d 222, 225 (5th Cir. Tex. 2014) (applying Texas law and stating that, "[m]utual agreement to arbitrate claims provides sufficient consideration to support an arbitration agreement."); *see also In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 677 (Tex. 2006) (consideration may take the form of bilateral promises to arbitrate).

Finally, the parties mutually agreed to the process by which arbitration would be initiated. For example, the parties agreed to the requirements for selecting an arbitrator (*e.g.*, both parties must submit a list of three qualified arbitrators, and if the parties cannot agree on an arbitrator, the

---

[3] *See* Tex. Bus. & Com. Code § 322.007(d); *Williamson v. Bank of N.Y. Mellon*, 947 F. Supp. 2d 704, 709 (N.D. Tex. 2013).

6

American Arbitration Association ("AAA") will select a qualified arbitrator). Such agreement clearly indicates intent to arbitrate any disputes arising out of Plaintiff's employment with OTB.

### 2. *Plaintiff's claims clearly fall within the scope of the Arbitration Agreement.*

The Arbitration Agreement undeniably covers Plaintiff's claim. Within her Complaint, Plaintiff asserts a cause of action against OTB relating to her employment and the terms and conditions of her employment. *See* Plfs' Complaint, at ¶¶ 1-26. The express terms of the Arbitration Agreement cover "any legal or equitable claims or disputes arising out of or in connection with employment, terms and conditions of employment, or the termination of employment with OTB..." (Ex. 1). The claims brought by Plaintiff, which accuse OTB of wrongdoing regarding its treatment of her during her employment and at the time of her resignation, most certainly are "claims or disputes arising out of or in connection with" Plaintiff's employment. *Id.* Plaintiff's sex (pregnancy) discrimination and retaliation and FMLA allegations are no exception. The claims are based on conduct that allegedly occurred during Plaintiff's employment or were connected to Plaintiff's employment with OTB, and are thus covered by the Arbitration Agreement.

Moreover, to the extent there are any challenges to or disputes regarding the scope, enforceability, or validity of the Arbitration Agreement, those issues are for an arbitrator to decide, not this Court. *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) ("An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other.").

Furthermore, the AAA's Employment Arbitration Rules and Mediation Procedures, delegate such issues to the arbitrator as well. (Exhibit 2, at AAA's Rule 6(a); APP. 004) ("The

7

arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement.")

Plaintiff bears the burden to show that her claims fall outside the scope of the Arbitration Agreement. *See Merrill Lynch, Pierce, Fenner, & Smith, Inc. v. Longoria*, 783 S.W.2d 229, 231 (Tex. App.—Corpus Christi 1989, no writ). The United States Supreme Court has held that in "the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *ATT Tech., Inc. v. Communication Workers of Am.*, 475 U.S. 643 (1986). Not only is there a complete absence of "forceful evidence" negating the application of the Arbitration Agreement to Plaintiff's claims, there is no evidence which even remotely negates its application to her claims. Indeed, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25. To be sure, district courts must defer to arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute . . . doubts should be resolved in favor of coverage." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-583 (1960). This Court should therefore resolve any doubts regarding the scope of the Arbitration Agreement in favor of arbitration.[4] As a result, Plaintiff's claims are covered by the Arbitration Agreement and the Joint Motion to Compel must be granted.

---

[4] Even if the FAA did not apply to the Arbitration Provision – which it does – this Court must enforce the Arbitration Provision under Texas law. *See Crossmark, Inc. v. Hazar*, 124 S.W.3d 422, 429 (Tex. App. – Dallas 2001, pet. denied); *Anglin v. Tipps*, 842 S.W.2d 266, 268 (Tex. 1992) (reiterating that Texas courts favor arbitration as a method of resolving legal disputes). Under Texas Civil Practices and Remedies Code § 171.021, a court shall order the parties to arbitrate on application of a party showing: (1) an agreement to arbitrate; and (2) the opposing party's refusal to arbitrate. Because the law strongly favors arbitration, the Texas Supreme Court has instructed courts to resolve any doubts about arbitration agreements in favor of arbitration. *Cantella & Co. v. Goodwin*, 924 S.W.2d 943, 944 (Tex. 1996); *Prudential Secs. Inc. v. Marshall*, 909 S.W.2d 896, 898 (Tex. 1995) ("Arbitration of disputes is strongly favored under the federal and state law."). As the Texas Supreme Court has stated, if a valid arbitration agreement exists and it encompasses the claims raised in the suit, the trial court has <u>no discretion</u> but to stay its proceedings and compel arbitration. *In re J.D. Edwards World Solutions Co.*, 87 S.W.3d 546, 549 (Tex. 2002).

**D.     The present lawsuit must be stayed.**

The Court should stay the proceeding until a resolution is reached in arbitration. *See Guitierrez v. Acad. Corp.*, 967 F. Supp. 945, 947 (S.D. Tex. 1997); *Tittle v. Enron Corp.*, 463 F.3d 410, 417 n. 6 (5th Cir. 2006) ("a stay is mandatory at the request of a party if the dispute is arbitrable"); *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 56 (Tex. 2008) (if a "claim falls within the scope of a valid arbitration agreement, the 'court has no discretion but to compel arbitration and stay its own proceedings.'"). Likewise, the applicable federal statute, 9 U.S.C. § 3, provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is preferable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. Even if a mandatory stay under 9 U.S.C. § 3 is not applicable, the Court has inherent discretion to stay Plaintiff's Complaint and claims pending the outcome of arbitration. *See Complaint of Hornbeck Offshore Corp.*, 981 F.2d 752, 754 (5th Cir. 1993); *see also Morrison v. Amway Corp.*, 49 F. Supp. 2d 529, 532 (S.D. Tex. 1998) ("The power to stay proceedings [pending arbitration] is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.").

The parties clearly entered into a binding and enforceable Arbitration Agreement, of which Plaintiff and her counsel were aware. Furthermore, the Arbitration Agreement expressly provides, "This policy substitutes one legitimate dispute resolution form (arbitration) for another (litigation), thereby waiving any right of either party to have the dispute resolved in court." When presented

9

with a copy of the Arbitration Agreement, Plaintiff agreed to comply with the parties' Arbitration Agreement and submit her claims to arbitration. As a result, the parties request that the Court compel arbitration and stay the proceedings pending the resolution of arbitration.

## IV.   CONCLUSION

For the reasons set forth above, the parties respectfully request that the Court grant their Motion to Compel and enter an Order compelling arbitration of Plaintiff's claims, and staying the case.

Dated: December 26, 2023

Respectfully submitted,

*/s/ Celeste R. Yeager*
Celeste R. Yeager
Texas State Bar No. 00797715
Michaela D. Noble
Texas State Bar No. 24104613

LITTLER MENDELSON, P.C.
2001 Ross Avenue, Suite 1500
Dallas, TX 75201
cyeager@littler.com
mnoble@littler.com
(214) 880-8100
(214) 880-0181 (Fax)

**ATTORNEYS FOR DEFENDANT**

*/s/ Jonathan J. Walters*
Jonathan J. "Jack" Walters
Texas State Bar No. 24096307

WALTERS LAW OFFICE, PLLC
jack@walterslawofficepllc.com
3113 S. University Drive, # 400
Fort Worth, Texas 76109
(682) 747-6800
(682) 747-6899 (Fax)

**ATTORNEY FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

   I certify that on this 26th day of December, 2023, the undersigned provided a copy of the ***Brief In Support Of Joint Motion To Stay Proceedings And Compel Arbitration*** to counsel in this case via the U.S. Northern District of Texas ECF filing system as follows:

Jonathan J. "Jack" Walters
WALTERS LAW OFFICE, PLLC
3113 S. University Drive, # 400
Fort Worth, Texas 76109
jack@walterslawofficepllc.com


                */s/ Celeste R. Yeager*
                Celeste R. Yeager

4881-6433-3720.5 / 119831-1004

11